**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **HECTOR MARIO VALENZUELA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LISA KEHL, Acting Director, Texas** | ) | |
| **Service Center, US Citizenship &** | ) | |
| **Immigration Services,** | ) | |
| | ) | |
| **MICHAEL CHERTOFF, Secretary** | ) | **No. 3:05-CV-1764-BF (B)** |
| **of the Department of Homeland** | ) | **ECF** |
| **Security, and** | ) | |
| | ) | |
| **ALBERTO R. GONZALES,** | ) | |
| **United States Attorney General,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

The parties consented to trial before the United States Magistrate Judge, and the District Court entered an Order Reassigning Case, filed February 22, 2006. Accordingly, this matter is before this Court for the conduct of all further proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c).

### I.

Plaintiff, a lawful permanent resident of the United States ("LPR"), has been attempting to immigrate his twenty-seven year old unmarried son, Rosmy Joel Valenzuela ("Rosmy"), to the United States since Rosmy was fourteen years old. Plaintiff and Rosmy are natives and citizens of Guatemala. Defendants are: (1) Lisa Kehl who was the Acting Director, Texas Service

Center, US Citizenship &  Immigration Services ("CIS") at the time this suit was filed;[1] (2)

Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"); and (3) Alberto

Gonzales, the Attorney General of the United States (collectively "Defendants").

II.

Plaintiff became a LPR on August 3, 1990.  Plaintiff filed an I-130 petition for his wife,

Ana Margarita Valenzuela ("Mrs. Valenzuela"), with the former Immigration and Naturalization

Service (now the United States Citizenship & Immigration Services ("CIS")) on November 1,

1993.  The petition included the four children of Plaintiff and Mrs. Valenzuela: Hector, Jr.;

Rosmy; Glenda; and William.  (Pl.'s Exh. 2.)  The INS approved the petition on January 13,

1994, and assigned the petition a priority date of November 1, 1993.  (Def.'s Mot., Tab 1, p. 14.)

Rosmy was born on March 1, 1979, became twenty-one years old on March 1, 1999 (according

to the CIS, Rosmy "aged out"), and was no longer eligible to be included on the November 1,

1993 petition.   The CIS granted Mrs. Valenzuela and Rosmy's three siblings LPR status on

March 30, 2001.

On June 2, 2000, Plaintiff filed a new form I-130, Petition for Alien Relative

("Petition"), claiming Rosmy is his son with Mrs. Valenzuela and entitled to become a LPR.

(Defs.' Mot., Tab 1, p. 3.)  Plaintiff claims that he made seven requests to Defendants from

March 10, 2002, through April 14, 2005, requesting the status of the Petition and notifying

Defendants that the priority date was current (Pl.'s Exh 1A-1H.)  Defendants never responded to

---

[1]  Evelyn Upchurch is the Director, Texas Service Center, CIS, and should be substituted for Lisa Kehl.

any of the inquiries.[2]  Rosmy has been waiting in Guatemala since November 1, 1993.  The CIS

has not acted on the Petition nor responded to any of Plaintiff's inquiries.

III.

Plaintiff claims that pursuant to 8 C.F.R. § 204.2(a)(4),[3] Rosmy retained his mother's

---

[2]  Defendants contend in footnote 3 in their Reply brief that:

> The CIS's current procedure for expediting cases is described in 82
> Inter.Rel. 2019 (December 19, 2005), (available on westlaw) which was
> implemented July 2005 for visa applicants with cases pending outside of
> processing timeframes: "For those people, if they call the call center, the
> customer service will make a reference to the local office using the
> SRMT (Service Request Management Tool) which will then forward a
> message to the office where the case is pending. At that point, the office
> must deal with the problem, as USCIS management will have a record as
> to who called, what the problem is, and whether or not the problem was
> resolved." The article further discusses the CIS's backlog elimination
> efforts, and use of the National Service Center call number as a
> management tool, in place of thousands of pieces of correspondence
> received by each Director daily. The National Service Center call number
> is found on the USCIS.gov website under hot topics.

Defendants contend that "Plaintiff should use this procedure to address any status problems and
delays, rather than seeking mandamus in this court."  Because this argument is in Defendants'
Reply Brief, Plaintiff has not had the opportunity to state whether Plaintiff attempted to expedite
the Petition by following this procedure.

[3]  8 C.F.R. § 204.2(a)(4) provides as follows:

> (4) Derivative beneficiaries. No alien may be classified as an immediate
> relative as defined in section 201(b) of the Act unless he or she is the direct
> beneficiary of an approved petition for that classification. Therefore, a child of an
> alien approved for classification as an immediate relative spouse is not eligible for
> derivative classification and must have a separate petition filed on his or her
> behalf. A child accompanying or following to join a principal alien under section
> 203(a)(2) of the Act may be included in the principal alien's second preference
> visa petition. The child will be accorded second preference classification and the
> same priority date as the principal alien. *However, if the child reaches the age of
> twenty-one prior to the issuance of a visa to the principal alien parent, a separate
> petition will be required. In such a case, the original priority date will be retained
> if the subsequent petition is filed by the same petitioner. Such retention of priority
> date will be accorded only to a son or daughter previously eligible as a derivative*

3

priority date of November 1, 1993.   Defendants contend that in Rosmy's class, an LPR filing for

an unmarried son over 21, petitions have a priority date of April 22, 1996, i.e., visa petitions

filed before that date can be allocated a visa.  (*Id*., Exh. 3.)  They explain that the Texas Service

Center ("TSC") is currently reviewing petitions in this class filed by January 4, 1999, roughly

three years after the priority date for this visa class.  (*Id*., Exh. 2.)   Defendants contend that the

Petition was filed in June 2000, well after the priority date.  (*Id*.)  Defendants contend that in

2004, the CIS admitted 946,142 visa beneficiaries but only a small fraction of the unmarried sons

category of 17,000 had priority retention dates in advance of the visa filing date.  Defendants

claim that to identify visas with advance priority dates, the TSC would have to adjudicate all

17,000 of these visas, most of which did not have an advance priority date, and thereby lose the

backlog reduction gains from targeting other visas, most of which have a more current priority

date than unmarried son visas, i.e., in effect accelerating adjudication of this class of visas.

Apparently, the TSC admits that it does not follow the regulation which provides that Rosmy

retains Mrs. Valenzuela's priority date of November 1, 1993.  *See* 8 C.F.R. § 204.2(a)(4)

IV.

On September 1, 2005, Plaintiff  filed an "Original Complaint for Relief in the Nature of

Writ of Mandamus, Injunctive Relief, and Declaratory Relief," alleging Defendants have

unreasonably delayed processing the Petition to immigrate his son Rosmy to the United States.

Plaintiff requests this Court to order Defendants to consider the Petition to determine whether the

facts stated in the petition are true and whether Rosmy is his unmarried son.  See 8 U.S.C. §

---

*beneficiary under a second preference spousal petition.* [Emphasis supplied.]

1154(b).  Defendants filed a "Motion to Dismiss or in the Alternative, Motion for Judgment as a Matter of Law" on December 13, 2005.  Plaintiff filed a  Response on January 2, 2006, and Defendants filed a Reply on January 18, 2006.  Defendants seek dismissal of this action for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and also seek "Judgment on the Pleadings and/or Summary Judgment."

A party seeking to invoke the jurisdiction of a federal court must prove that jurisdiction is proper. *See Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1177 (5th Cir. 1984). Accordingly, in this case Plaintiff must prove that the Court has subject matter jurisdiction.  The Court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  This Court will resolve Defendants' motion based upon the complaint supplemented by undisputed facts evidenced in the record. The Court must take the allegations of the complaint as true and draw all inferences in Plaintiff's favor.  *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States,* 776 F.2d 116, 117 (5th Cir. 1985).  Dismissal is warranted if Plaintiff's allegations, together with any undisputed facts, do not establish that the District Court has subject matter jurisdiction. *See Saraw,* 67 F.3d at 569; *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir. 1992).

Defendants alternatively seek judgment on the pleadings.[4] A motion brought pursuant to

---

[4]  Defendants also contend that they are entitled to summary judgment.  However, Defendants have not supported their motion with affidavits or other competent summary judgment evidence.

FED. R. CIV. P. 12(c) can dispose of cases when, because the material facts are not in dispute, the Court can render a judgment on the merits by looking to the substance of the pleadings and any judicially noticed facts. *Hebert Abstract Co. v. Touchstone Props., Ltd*., 914 F.2d 74, 76 (5th Cir. 1990) (referencing 5A Wright & Miller, *Federal Practice & Procedure,* § 1367 at 509-10 (1990)). The motion is specifically designed to facilitate the interpretation and construction of law. *Id*. (referencing 5A Wright & Miller, *Federal Practice & Procedure,* § 1367 at 511 ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain. This may occur, for example, in . . . litigation in which the sole question is the applicability or interpretation of a statutory provision.")).

The issue before the Court is whether, taken in the light most favorable to Plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc*., 278 F.3d 417, 420 (5th Cir. 2001). Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if no disputed issues of fact exist and only questions of law remain. *Voest-Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 891 (5th Cir. 1998). In ruling on a Rule 12(c) motion, the Court is confined to the pleadings and must accept all allegations in the pleadings as true. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir.1991).

## V.

Federal District Courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Original jurisdiction does not arise under § 1331 unless a plaintiff alleges a substantial claim founded directly upon federal

law. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). Plaintiff

asserts that jurisdiction exists pursuant to the declaratory judgment statute, 28 U.S.C. § 2201, the

mandamus statute, 28 U.S.C. § 1361; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701

et seq.; and 28 U.S.C. § 1331.

Defendants claim that Congress, in a series of amendments, "removed the court's

jurisdiction to review a denial of a visa petition or the revocation of a visa petition."[5] More

specifically, Defendants rely upon the jurisdiction-stripping provision of 8 U.S.C. §

1252(a)(2)(B)(ii),[6] which deprives courts of jurisdiction over areas where the Department of

Homeland Security ("agency") has been granted discretion by the Immigration and Nationality

Act ("INA").[7] *Id.* That section provides that judicial review may not be had of "any . . . decision

or action of the Attorney General the authority for which is specified under this subchapter to be

in the discretion of the Attorney General." "[T]his subchapter" refers to subchapter II of Chapter

---

[5] Defendants recognize that Plaintiff has not invoked jurisdiction under 8 U.S.C. § 1329 but include reference to it to explain the current jurisdictional scheme. This statute (§ 279 of the INA) originally granted jurisdiction over immigration lawsuits against the CIS over visa denials, but the statute was repealed in 1996 and now provides that it shall not be "construed as providing jurisdiction for suits against the United States or its agencies or officers." Plaintiff is not complaining about a visa denial.

[6] INA as amended by Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 242(a)(2)(B)

[7] INA § 242(g), 8 U.S.C.A. § 1252(g), the statute which precludes court jurisdiction to hear claims by aliens arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders does not deprive the District Court of jurisdiction over aliens' suits for mandamus and declaratory judgment seeking to compel Immigration and Naturalization Service ("INS") to process their applications for adjustment of status pursuant to Diversity Immigrant Visa Program, inasmuch as such suits do not involve any specific steps in the deportation process or any aspect of the deportation process at all. *See Kale v. I.N.S.*, 37 Fed. Appx. 90 (5th Cir. 2002).

12 of Title 8, which covers sections 1151 through 1378.  The subchapter includes 8 U.S.C. §

1153(a)(2), which provides that "an alien lawfully admitted for permanent residence may file a

petition on behalf of . . . an unmarried son or daughter for preference classification."  *See* 8

C.F.R. § 204.2(a)(4).  Defendants assert that this case should be dismissed because 8 U.S.C. §

1252(a)(2)(B)(ii) strips this Court of subject matter jurisdiction to consider CIS's discretionary

decisions regarding visas.[8]  Defendants state that the discretionary language, "aliens . . . may be

issued immigrant visas" in INA § 201(a) is an indication of the Court's lack of jurisdiction to

review any agency action on immigrant visas.  However, Plaintiff does not seek a review of any

"agency action" on an immigrant visa.

   For aliens who wish to immigrate permanently, a visa petition is the first step in the

process for an alien to lawfully enter and remain in the United States.  Plaintiff's Exhibit 4

describes the procedure as follows:

    For a lawful permanent resident parent to immigrate his child, the parent

---

[8] Defendants contend the INA's total statutory visa processing procedures, including the specific limitations in § 279 (8 U.S.C. § 1329), § 242(a)(2)(B)(I) and (ii) (8 U.S.C. § 1252(a)(2)(B)(i) and (ii)), and § 242(b)(9) (8 U.S.C. § 1252(b)(9)) strip the Court of subject matter jurisdiction. The terms of 8 U.S.C.A. § 1329 provide that "Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." The terms of 8 U.S.C. § 1252(b)(9) govern review of removal orders.  Neither 8 U.S.C. § 1329 nor § 1252(b)(9) strips the Court of jurisdiction to consider delays in the consideration of visa petitions.  Accordingly, the Court will consider the jurisdiction stripping petition of 8 U.S.C. § 1252(a)(2)(B)(ii) which provides that the Court may not review discretionary decision regarding visa petitions.

1.

("petitioner") and child ("beneficiary") must use a three-step process. First, the USCIS must approve an immigrant visa petition, I-130 Petition for Alien Relative. This petition is filed by your relative (sponsor) and must be accompanied by proof of your relationship to the requesting relative. Second, the Department of State must determine if an immigrant visa number is immediately available to you, the foreign national, even if you are already in the United States. When an immigrant visa number becomes immediately available to you, it means that you can apply to have one of the immigrant visa numbers assigned to you. You can check the status of a visa number in the Department of State's Visa Bulletin. Third, . . . [i]f you are outside the United States when an immigrant visa number becomes available for you, you must then go to the U.S. consulate servicing the area in which you reside to complete your processing.

An I-130 petition is the first-step to immigrating a beneficiary. "The approval of [a] visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status." Form I-797 (Approval Notice of an I-130 Petition). (Plaintiff's Exh. 3.) Rather, the CIS reviews the I-130 petition and the supporting documentation to see if it establishes the family relationship. *See* 8 U.S.C. § 1154(a)(1)(A)(i). The CIS approves the petition if the sponsor and the alien are qualified. *See* 8 U.S.C. § 1154(b).[9]

Rosmy is an alien outside the United States on whose behalf Plaintiff, Rosmy's father, filed the Petition in June 2000, after Rosmy turned twenty-one while he was waiting for action on the petition to immigrate him with his mother and brothers. Plaintiff does not ask the Court to review any "decision or action of the Attorney General." The Petition has been neither approved

---

[9] "After an investigation of the facts in each case ... the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . approve the petition and forward one copy thereof to the Department of State." 8 U.S.C. § 1154(b). [Emphasis supplied].

nor denied.  In fact, the record does not show anything about the Petition, other than the fact that Defendants have a copy of it.[10]  Hence, the Petition has not reached even the threshold step at which the CIS reviews the Petition and the supporting documentation to determine whether the family relationship is established.

Although Defendants may have discretion in deciding whether to approve or deny the Petition, in which case this Court might lack subject matter jurisdiction, Defendants have a nondiscretionary duty to process visa applications as required by 8 U.S.C. § 1154(b) ("After an investigation of the facts in each case ... the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . .  approve the petition and forward one copy thereof to the Department of State.").  The CIS has a duty to determine whether a LPR's petition for preference status for his or her unmarried son waiting in another country, based on his or her relationship to the petitioner, should be granted.  *See Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir. 1978). Therefore, Defendants' consideration of the Petition at the initial step is purely ministerial and not discretionary.  The Court concludes that the judisdiction-stripping provisions cited by Defendants do not deprive this Court of subject matter jurisdiction.

VI.

---

[10]  Defendants suggest that Rosmy has a "delayed birth certificate," making the Petition inherently suspicious and subject to additional scrutiny, particularly in light of 9/11.  However, this argument is confusing because nothing in the record suggests that the Petition is under consideration by Defendants.  How can Defendants make a determination that the Petition is inherently suspicious when Defendants claim they have not reached the Petition yet because it remains mixed with 17,000 petitions of unmarried male sons?  Plaintiff denies that the certificate is a "delayed birth certificate."  No questions about Rosmy's birth certificate are material to whether this Court has subject matter jurisdiction in this case.

The Court must determine whether the District Court has subject matter jurisdiction under the Mandamus Act, 28 U.S.C. § 1361.[11]   "The test for jurisdiction is whether mandamus would be an appropriate means of relief."   *See Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) (citing *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir. 1969)).   Federal jurisdiction to grant a Writ of Mandamus depends upon three elements: "'A plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available.'"   *United States v. O'Neil*, 767 F.2d 1111, 1112 (5th Cir. 1985) (quoting *Green v. Hedler*, 742 F.2d 237, 241 (5th Cir. 1984)). The allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction.  *Jones*, 609 F.2d at 781.

Plaintiff alleges that the priority date for the Petition is November 1, 1993, that petitions for this date have been decided, and that his Petition must have been overlooked.  Taking the allegations as true and construing them most favorably to Plaintiff, Defendants have a clear duty to adjudicate the Petition.  *See Hsieh*, 569 F.2d at 1182.  Plaintiff alleges that he contacted Defendants seven times without a response, and thus it appears that no other remedy is available.

Judge Vasquez in the District of New Mexico found that the plaintiffs had established mandamus jurisdiction under nearly identical circumstances to those in the case before the Court. *Yu v. Brown,* 36 F.Supp. 2d 922, 932 (D. N.M. 1999).  One of the plaintiffs in *Yu* had submitted

---

[11]  The terms of 8 U.S.C. § 1361 provide:

> The district courts shall have original jurisdiction of any action in
> the nature of mandamus to compel an officer or employee of the
> United States or any agency thereof to perform a duty owed to the plaintiff.

her application for legal permanent residence two and a half years earlier. *Id.*  She later learned

that her fingerprints had not cleared and refiled her fingerprint card.  *Id.*  Judge Vasquez

concluded that the defendants, including the INS, had a non-discretionary duty to process the

plaintiffs' applications and held that the defendants had breached this duty by failing to act on

Yu's application within a year of the time she refiled her fingerprint card. *Id.* at 933. Other courts

have found that CIS's predecessor had a mandatory duty to adjudicate applications for

adjustment of status. *See, e.g., Iddir v. I.N.S.,* 301 F.3d 492, 500 (7th Cir.2002) ("the relevant

statutes and regulations confirm that the INS did have the duty to adjudicate the appellants'

applications in a reasonable period of time."); *Batista v. INS*, No. 99 Civ. 2847, 2000 WL

204535, at *5 (S.D.N.Y.2000) (finding that a delay of thirty-eight months in processing an

application for adjustment of status stated a sufficiently colorable claim for mandamus

jurisdiction, but granting summary judgment dismissing the claim because that delay was not

unreasonable under the circumstances); Razik v. Perryman, Nos. A76-775-899-902, 2003 WL

21878726, *2 (N.D.Ill. Aug. 7, 2003); *Krishnamoorthy, v. Ridge,* No. 03 C 415, 2003 WL

21204051 (N.D.Ill. May 19, 2003); *Setharatsomphou v. Reno,* No. 98 C 7076, 1999 WL 755292

(N.D.Ill. Sept. 27, 1999); *Paunescu v. INS*, 76 F.Supp. 2d 896, 900-901 (N.D. Ill.1999);

*Agbemapble v. I.N.S.,* No. 97 C 8547, 1998 WL 292441, *2 (N.D.Ill. May 18, 1998).  *Contra*,

*Mustafa v. Pasquerell*, L 488399, 2006 WL 488399 *1 -6 (W.D. Tex. 2006); *Zheng v. Reno*, 166

F.Supp. 2d 875, 880-81 (S.D.N.Y. 2001) (noting that scheduling issues remain within the

agency's discretion and "courts in this district have repeatedly held that mandamus relief is

unavailable for delays in the adjustment process").  The Court finds that *Yu v. Brown* and its

progeny are more factually similar to the present case and hence more persuasive than the

adjustment of status cases from the Western District of Texas and the Southern District of New

York mentioned above.  Plaintiff is not seeking adjustment of status like the Plaintiffs in *Mustafa*

and *Zheng*.  Rather, Plaintiff has been attempting to reunite his family since 1993.  Plaintiff's son

is waiting in Guatemala, must remain unmarried, and is now 27 years old.  Taking Plaintiff's

factual allegations as true and construing them most favorably to Plaintiff, Defendants have a

ministerial duty to consider the Petition and may not unreasonably delay the performance of that

duty.  The determination of what constitutes an unreasonable time depends upon facts and

circumstances that are in dispute.  Nevertheless, the Court has subject matter jurisdiction under

the Mandamus Act, 28 U.S.C. § 1361 to compel Defendants to act on the Petition if the evidence

shows that they have unreasonably delayed the initial step in the visa process.

VII.

Plaintiff also asserts that Defendants owe a duty mandated by the APA, 5 U.S.C. § 701, et seq., which imposes a duty on agencies to conclude matters within a "reasonable time." The APA does not provide an independent basis of subject matter jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 107 (1977). However, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld. *Sierra Club v. Glickman,* 156 F.3d 606, 617 (5th Cir.1998) (holding that a suit to compel agency action could be brought under APA); *see also Fu v. Reno*, Civ. A. 3:99-CV-0981-L, 2000 WL 1644490 (N.D. Tex. Nov. 1, 2001) (same); *Hu v. Reno*, Civ. A. 3:99-CV-1136-BD, 2000 WL 425174 at *2 (N.D. Tex. Apr. 18, 2000) (same). Defendants contend that after *Hu* and *Wu* were decided, "Congress made visa revocations nonreviewable" and that "[g]iven Congress's recent jurisdictional amendments in the REALID Act and IRTPA made to IIRIRA's jurisdictional elimination and limitations, this [C]ourt does not have jurisdiction here." Defendants focus on the Court's lack of jurisdiction to review visa revocations, visa denials, and other discretionary decisions. This Court has found that the CIS does not have discretion to refuse to consider the Petition. Plaintiff is requesting the Court's intervention to determine if Defendants have waited an unreasonable time to comply with their duty to consider the Petition. The APA § 555(b) provides in relevant part: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Many courts, including the United States District Court for the Northern District of Texas have held in

14

immigration cases that petitioners and applicants have a clear right to have their adjustment applications and visa petitions adjudicated within a reasonable time of their filing. *See, e.g.*, *Alkenani v. Barrows*, 356 F.Supp. 2d 652, 656 (N.D. Tex. 2005) (Kaplan, USMG); *Fraga By and Through Fraga v. Smith*, 607 F.Supp. 517, 521 (D.C. Or. 1985); *Yu*, 36 F.Supp. 2d at 930-932; *Paunescu.,* 76 F.Supp.2d at 901; *see also Agbemaple v. INS*, No. 97-C-854, 1998 WL 292441 at *2 (N.D.Ill. May 18, 1998)(unpublished); *Fu*, 2000 WL 1644490; *Hu*, 2000 WL 425174 at *2.

Defendants have offered no statutory or case law which provides that the CIS has no duty to consider the Petition of a father, who is a LPR, to immigrate his unmarried son to the United States, or that the agency has discretion to not consider the Petition. The father in this case originally included his son on a family petition in 1993 but was forced to file a new petition because the son turned twenty-one while the son was waiting in Guatemala for the CIS to act. The son is now twenty-seven years old, and his mother and brothers became LPRs of the United States over five years ago. The Court is not persuaded that the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B) deprives the Court of subject matter jurisdiction over Defendants' non-discretionary duty to consider the Petition and to determine whether the family relationship of father-son exists between Plaintiff and Rosmy. The Court finds that it has subject matter jurisdiction pursuant to the mandamus statute, 28 U.S.C. § 1361; and the APA, 5 U.S.C. § 701 et seq., together with 28 U.S.C. § 1331.[12]

---

[12] Plaintiff also alleges jurisdiction pursuant to the declaratory judgment statute, 28 U.S.C. § 2201, but Plaintiff does not meet his burden to prove that the Court has jurisdiction pursuant to this statute.

VIII.

Defendants contend that even if the Court determines that it has subject matter jurisdiction, Defendants are entitled to judgment as a matter of law.  However, the Court finds that in this case genuine issues of material fact preclude judgment as a matter of law or summary judgment.  Defendants' factual assertions are not supported by affidavits or other competent summary judgment evidence.  In some instances, the Court is unable to distinguish the facts from the arguments.[13]  The Court cannot determine as a matter of law what happened (or should have happened) to the Petition, although it appears that Defendants failed to follow the regulation which would give the Petition a priority date of November 1, 1993.[14]  Disputed material facts include, but are not limited to, whether the priority date for the Petition is November 1, 1993, pursuant to 8 C.F.R. § 204.2(a)(4) or June 2, 2000, the date the Petition was filed; whether the priority date is current; whether the Petition is outside the time-processing frame; whether the Petition is entitled to be expedited; whether the Petition was transferred or should have been transferred to the CSC for processing; why Plaintiff's inquiries about the Petition remain unaddressed; and whether, as Defendants imply in their briefs, the Petition is under consideration but is being held up because "a delayed birth certificate makes it "inherently suspicious."  The Court is unable to conclude as a matter of law whether Defendants' inaction, i.e., its delay in consideration of the Petition and its failure to respond to inquiries, is unreasonable.  Many of the

---

[13] *See e.g.*, footnote 8 regarding Defendants' claim that Rosmy has a "delayed birth certificate."

[14] Defendants have cited no authority that would relieve them of their duty to follow their own regulations, i.e., that would excuse their failure to give the Petition Rosmy's mother's priority date of  November 1, 1993, pursuant to 8 C.F.R. § 204.2(a)(4).

facts and circumstances mentioned in the briefs need clarification.  Judgment for Defendants is not warranted at this nascent stage of the litigation.  Defendants' motion to dismiss for lack of subject matter jurisdiction and alternative motion for judgment on the pleadings and/or summary judgment, filed December 15, 2005, are DENIED.

Signed, August 23, 2006.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

17